In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3432

CITY OF CHICAGO, ILLINOIS,

*Plaintiff-Appellant*,

*v.*

STUBHUB!, INCORPORATED,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 3284—**Wayne R. Andersen**, *Judge*.

ARGUED SEPTEMBER 8, 2010—DECIDED SEPTEMBER 29, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and
KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The resale of tickets to
sports, concerts, and other events usually is illegal in
Illinois, if the tickets fetch more than the original
price. 720 ILCS 375/1.5(a). Resale at a premium is
called scalping, and rules that forbid it even when the
events' promoters are content to allow resale have puz-
zled economists. See Craig A. Depken, II, *Another look at*

*anti-scalping laws: Theory and evidence*, 130 Public Choice 55 (2006); Pascal Courty, *Some Economics of Ticket Resale*, 17 J. Econ. Perspectives 85 (Spring 2003); Stephen K. Happel & Marianne M. Jennings, *Assessing the Economic Rationale and Legal Remedies for Ticket Scalping*, 16 J. Legislation 1 (1989); Sherwin Rosen & Andrew M. Rosenfield, *Ticket Pricing*, 40 J.L. & Econ. 351 (1997). Cf. *United States v. Mount*, 966 F.2d 262 (7th Cir. 1992) (discussing one potential justification for restrictions on reselling tickets).

In 1991 Illinois authorized ticket brokers to resell tickets at premium prices, 720 ILCS 375/1.5(b), if they registered with the Illinois Secretary of State and collected all local taxes—for municipalities in Illinois tax the selling price of tickets, see 65 ILCS 5/11-42-5, and want to collect additional taxes on the difference between the original selling price and any higher resale price. Since 1995 the City of Chicago has taken advantage of this opportunity to tax the incremental price of resold tickets. Chicago Municipal Code §4–156–020. The tax is 9% of the original price, and a further 9% of any profit on a ticket's resale.

Illinois amended its scalping laws again in 2005, adding a new subsection (c) to the Ticket Sale and Resale Act. 720 ILCS 375/1.5(c). This amendment allows an "Internet auction listing service" to resell tickets, but it attaches several conditions. One is that the auction service register with both the Secretary of State and the Department of Financial and Professional Regulation. Another is that the auction service either collect and remit all required taxes or publish "a written notice on the

website after the sale of one or more tickets that automatically informs the ticket reseller of the ticket reseller's potential legal obligation to pay any applicable local amusement tax in connection with the reseller's sale of tickets, and discloses to law enforcement or other government tax officials, without subpoena, the name, city, state, telephone number, e-mail address, user ID history, fraud complaints, and bidding and listing history of any specifically identified reseller or purchaser upon the receipt of a verified request from law enforcement or other government tax officials relating to a criminal investigation or alleged illegal activity". 720 ILCS 375/1.5(c)(6)(B).

StubHub!, which operates an Internet auction site, has registered with the appropriate officials and permits its clients to resell tickets to events in Illinois. It collects commissions from both the seller (15% of the resale price) and the buyer (10% of the resale price) but does not collect taxes. Instead it provides each reseller and buyer with the notice required by §1.5(c)(6)(B) and stands ready to furnish taxing jurisdictions with the information specified by that subsection. Chicago does not think that it would be worthwhile to pursue thousands of persons for a few dollars apiece; instead it wants StubHub! and similar services to collect and remit the taxes. (Even when the stakes are larger, tracking down retail transactions and ensuring payment can be difficult. See *Hemi Group, LLC v. New York City*, 130 S. Ct. 983 (2010).) Chicago's ordinances have long provided that sales agents must collect and remit its amusement taxes; a recent amendment to §4–156–010 of

the Municipal Code says that a "reseller's agent" means "a person who, for consideration, resells a ticket on behalf of the ticket's owner or assists the owner in reselling the ticket. The term includes but is not limited to an auctioneer, a broker or a seller of tickets for amusements . . . and applies whether the ticket is resold by bidding, consignment or otherwise, and whether the ticket is resold in person, at a site on the Internet or otherwise."

Because StubHub! has taken the position that Illinois law permits it to disregard municipal taxes, Chicago filed this suit in state court seeking a judgment that StubHub! is responsible for the amusement tax. StubHub! removed the proceeding to federal court under the diversity jurisdiction. 28 U.S.C. §1332(a). A district judge dismissed Chicago's complaint under Fed. R. 12(b)(6). 622 F. Supp. 2d 699 (N.D. Ill. 2009). It held that, whether or not the City has the authority to levy a tax on resales and designate StubHub! as a "reseller's agent," the tax is preempted by the Preemption Act, 65 ILCS 5/8–11–6a, which prohibits home-rule municipalities from using their authority to tax the "sale or purchase of tangible or personal property" based on a percentage of the sales price. An intermediate court in Illinois has stated that tickets are "tangible personal property," see *Mr. B's, Inc. v. Chicago*, 302 Ill. App. 3d 930, 935, 706 N.E.2d 1001, 1005–06 (1998), and the district judge thought this dispositive. When sitting in diversity, a federal court should follow the decision of an intermediate state appellate court "unless it is convinced by other persuasive data that the highest court of the state would decide

otherwise*." West v. AT&T*, 311 U.S. 223, 237 (1940). The district judge did not think that any decision by the Supreme Court of Illinois implies a contrary understanding of "tangible personal property."

The parties' briefs on appeal discuss at length whether Chicago has the authority to tax the resale of tickets by Internet auction services—and, if it does, whether that authority is superseded by either the 2005 amendment to the Ticket Sale and Resale Act or by the Preemption Act. For reasons that we discuss later, we think it appropriate to ask the Supreme Court of Illinois to decide whether Chicago may require StubHub! to collect and remit the tax. Certification of a state-law issue is appropriate, however, only if that issue is dispositive. StubHub! contends that federal law blocks Chicago from imposing a tax on Internet auction sites, so we address that possibility first.

StubHub! relies on two federal statutes: §230(e) of the Communications Decency Act, 47 U.S.C. §230(c), and the Internet Tax Freedom Act, 47 U.S.C. §151 note. Section 230's title, "Protection for private blocking and screening of offensive material", does not suggest that it limits taxes that have nothing to do with the content of any speech (the City's tax is the same whether the theater is performing "South Pacific" or "Hair"). Subsection (c)'s caption, "Protection for 'Good Samaritan' blocking and screening of offensive material" bodes even less well for StubHub!. But it nonetheless insists that the statutory text establishes a tax immunity. Subsection (c) provides:

(1) No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) No provider or user of an interactive computer service shall be held liable on account of—

> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

StubHub! relies on subsection (c)(1). As earlier decisions in this circuit establish, subsection (c)(1) does not create an "immunity" of any kind. See *Doe v. GTE Corp.*, 347 F.3d 655, 660 (7th Cir. 2003); *Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. craigslist, Inc.*, 519 F.3d 666, 669–71 (7th Cir. 2008). It limits who may be called the publisher of information that appears online. That might matter to liability for defamation, obscenity, or copyright infringement. But Chicago's amusement tax does not depend on who "publishes" any information or is a "speaker". Section 230(c) is irrelevant.

The title of the Internet Tax Freedom Act is more promising. As with most statutes, however, the details are

more complex than the title portends. The statute does not create "tax freedom" for transactions on the Internet but instead forbids "[m]ultiple or discriminatory taxes on electronic commerce." Section 1101(a). These are defined terms. Section 1105(6) says that a "multiple" tax means two states taxing the same thing without a tax credit. There is only one tax on tickets for events in Chicago (the location of the event ensures that no other municipality can levy a tax). Section 1106(C) drives that point home by stating that sales and use taxes on "tangible personal property" are valid even if they otherwise would be called "multiple" taxes. So if, as a matter of Illinois law, tickets are "tangible personal property", the rule against multiple taxes would not apply even if there *were* multiple taxes (which there aren't).

Section 1105(2)(B)(ii) defines a tax as "discriminatory" if "a provider of Internet access service or online services is deemed to be the agent of a remote seller for determining tax collection obligations *solely* as a result of—(I) the display of a remote seller's information or content on the out-of-State computer server of a provider of Internet access service or online services; or (II) the processing of orders through the out-of-State computer server of a provider of Internet access service or online services." (Emphasis added.) Chicago deems an electronic auction service to be a reseller's agent, but not "solely" because it displays information or processes orders. Recall the definitional clause of Chicago's ordinance: a reseller's agent is "a person who, for consideration, resells a ticket on behalf of the ticket's owner or assists the owner in reselling the ticket. The term in-

cludes but is not limited to an auctioneer, a broker or a seller of tickets for amusements . . . and applies whether the ticket is resold by bidding, consignment or otherwise, and whether the ticket is resold in person, at a site on the Internet or otherwise." Chicago Municipal Code §4–156–010. This says that the location and technology of an auction must be ignored; it does not make anything turn on the role of a computer server or the provision of electronic services. Web sites such as craigslist that list items for sale, after the fashion of classified ads in newspapers, but do not participate in the resale transaction, are not resellers' agents under Chicago's ordinance (and might possess a tax immunity under §1105(2)(B)(ii) if they were). But intermediaries that take an active role in staging an auction and exchanging goods for money, as StubHub! does, are resellers' agents no matter what technology they employ. Because the ordinance applies equally to ticket resales at physical auction houses, the Chicago Board of Trade, and venues such as StubHub!, the tax is not "discriminatory" under §1105(2)(B)(ii).

This conclusion brings us back to Illinois law. StubHub! contends that Chicago's tax is not within the City's home-rule powers because it acts as an occupation tax when applied to electronic intermediaries. StubHub! also maintains that the state's decision not to label electronic-commerce sites as "agents" in the 2005 legislation means that a municipality cannot deem them so—even though none of the 2005 amendment's language forbids that designation. The argument, in other words, is that although the legislative history of a federal statute may be used only to resolve ambiguities in the

enacted text, see *Puerto Rico Department of Consumer Affairs v. ISLA Petroleum Corp.*, 485 U.S. 495 (1988), Illinois would give the force of law to legislative history that explains the *absence* of particular provisions in the legislation. Finally, StubHub! contends that we should follow the conclusion of *Mr. B's* that the legal incidence of Chicago's amusement tax is on the ticket, a bit of "tangible personal property," rather than, as the City contends, on the ticket's grant of a license to attend the event. If Chicago placed a tax on patent royalties, that tax would not be deemed one on the paper on which the contract was written, even though the physical contract is "tangible personal property." Chicago maintains that this is equally true of tickets.

The argument that the amusement tax is on the physical ticket helped Chicago win *Mr. B's*; Chicago now regrets talking the court into that conclusion. It is not a federal court's job to extract a litigant from a hole dug for itself in state litigation. But the Supreme Court of Illinois is not bound by the appellate decision in *Mr. B's*. We're not "bound" by it either—but we should not go against it unless persuaded that the Supreme Court of Illinois would disapprove it. The Supreme Court of Illinois has never addressed any of the three principal questions in dispute between the parties: whether the tax works as an occupation tax, whether the history of the 2005 amendment prevents Chicago from defining Internet auction sites as resellers' agents, and whether the amusement tax is one on "tangible personal property." The subject therefore is within the scope of Ill. S. Ct. R. 20, which permits this court to certify determinative

issues for which "there are no controlling precedents" in the Supreme Court of Illinois. The question whether Chicago can tax the resale of tickets on electronic auction sites also is important for all municipalities in Illinois—and for the people who would be subject to the tax if the City prevails.

Certification adds to the cost of litigation and may delay its outcome. There are many web-based auction sites. If this meant that a lot of similar cases were under way in both state and federal court, there would be little reason to certify one to the Supreme Court of Illinois. We could make a decision, confident that any error would be corrected by the state judiciary before too much time had passed. As far as we can tell, however, the state judiciary will be unable to address this subject unless we certify. There are only two pending cases, both in federal court. (The other is *Chicago v. eBay Inc.*, No. 10-1144, which was argued in tandem with the suit against StubHub!, and which we will hold in abeyance pending the resolution of this proceeding.) Both suits began in state court and were removed under the diversity jurisdiction. Any similar suit likewise would be removable. (As far as we know, none of the web-based auction sites is incorporated in Illinois or has its principal place of business there.) This means that the state judiciary may never have an opportunity to resolve this dispute. The only way the federal judiciary can be sure that it is applying authentic state law is to certify the subject to state court.

We therefore respectfully request the Supreme Court of Illinois to inform us whether municipalities may

require electronic intermediaries to collect and remit amusement taxes on resold tickets. We phrase the question this way to ensure maximum flexibility for the state judiciary, which may elect to address any of the three sub-questions we have already identified, or may conclude that some other issue altogether determines the appropriate answer. The clerk of this court will transmit to the Supreme Court the appellate briefs and the short record, and at the state court's request will transmit the full record.