In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00434-CV
_____

**CHRIS DAVIS, Appellant**

**V.**

**MOTIVA ENTERPRISES, L.L.C., Appellee**

**On Appeal from the 1st District Court**
**Jasper County, Texas**
**Trial Cause No. 34022**

**MEMORANDUM OPINION**

Chris Davis sued (1) Chris Fournet for invasion of privacy by public disclosure of private facts and by intrusion on seclusion, libel, and intentional infliction of emotional distress; and (2) Motiva Enterprises, L.L.C. for negligent supervision, negligent entrustment, and negligent undertaking.[1] Motiva filed a motion to dismiss based on the Communications Decency Act ("CDA"), which the trial court granted. In this permissive appeal, Davis raises two appellate issues

---

[1] Fournet is not a party to this appeal.

1

challenging the dismissal of her lawsuit against Motiva. *See* Tex. R. App. P. 28.3; *see also* Tex. R. Civ. P. 168; Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (West 2015). We affirm the trial court's judgment.

Communications Decency Act

In issue one, Davis contends that the trial court erred by dismissing her claims against Motiva pursuant to section 230 of the CDA. "[A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id*. "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id*. We review the trial court's ruling on questions of law *de novo*. *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied). We take the plaintiff's allegations as true and consider whether the petition contains "'enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In her petition, Davis alleged that, while employed by Motiva, Fournet used Motiva's technology and facilities to lodge "an obscene cyber-strike campaign" against her by posting advertisements to Craig's List and posing "as [Davis] as if

2

she were soliciting for sexual encounters with strangers[.]" Davis alleged that Fournet had previously used Motiva's technology for several years to access Craig's List for "soliciting sexual encounters" and "other pornographic, swinger life, or adult 'friend finder' websites" during work hours and while under Motiva's supervision. She alleged that "Motiva employees, including those in management, would by their proximity and interaction with Fournet have known or suspected his consistent interactions with pornographic and adult websites during working hours using Motiva IT."

Davis claimed that Motiva's Code of Conduct prohibits the use of its technology to commit fraud or to access "pornography or any other form of nude, indecent, vulgar, obscene, or otherwise objectionable material." The Code states that "the use of Motiva IT and communication facilities is logged [and] monitored for the purposes of information security, operational management, and 'cybercrime', and to ensure it is compliant with laws, regulations, and Motiva policies." The Code requires anyone who suspects or has knowledge of a violation of the Code to report the violation to Motiva's human resources department. Given these policies, Davis alleged that Motiva (1) had reason to know and anticipate that employees could and were likely to access websites that were "not of a business nature while on the premises of, or using property owned by Motiva in the course

of their employment and outside of the scope of their employment[;]" (2) "knew or should have known from its 'logged' and 'monitored' information that Fournet was engaging in wrongful activity"; and (3) knew of Fournet's "sexual and inappropriate content internet browsing" and "of his leaving and returning to the jobsite in order to conduct those sexual encounters he solicited using Motiva IT property, and failed to implement procedures as described in Motiva's Code of Conduct to investigate and discipline such behavior."

Davis asserted a claim for negligent supervision, alleging that Motiva: (1) failed to exercise ordinary care in supervising Fournet so as to prevent his foreseeable misconduct from causing harm to Davis; (2) "knew or had reason to know of the reason for supervision and indeed, created a duty for the employees of Motiva to act in supervision and report such misconduct in addition to Motiva's own logging and monitoring of the personal use of Motiva IT and communication facilities[;]" and (3) failed in its duty to log and monitor the personal use of Motiva technology and communication facilities, or to investigate and discipline Fournet after any reporting of Fournet's violations of Motiva's Code of Conduct, or failed to properly train Fournet. Davis also claimed negligent entrustment on grounds that (1) Motiva entrusted technology and communication facilities to Fournet; (2) Fournet was reckless and incompetent when using Motiva's technology on

numerous occasions; and (3) Motiva knew or should have known that Fournet was reckless and incompetent with Motiva's property. Finally, Davis alleged negligent undertaking, pleading that Motiva: (1) "undertook to perform services that it knew or should have known were necessary for [Davis's] protection as a member of a community in the . . . region where Motiva operates and has employees[;]" (2) did not exercise reasonable care when performing such services; and (3) increased the risk of harm by failing to perform those services. Davis alleged that Motiva's conduct proximately caused her injuries.

In its motion to dismiss, Motiva argued that section 230(c)(1) and 230(c)(2) of the CDA barred Davis's claims against Motiva because (1) Motiva is a provider of an interactive computer service in accordance with section 230; (2) Fournet, not Motiva, was the information content provider; (3) Davis's claims attempt to treat Motiva as the "publisher" or "speaker" of the information Fournet posted; and (4) Davis's claims were entirely based on Motiva's Code of Conduct. The trial court agreed and dismissed Davis's claims against Motiva with prejudice. On appeal, Davis contends that section 230 does not foreclose all state law claims but allows claims based on "state and local laws within the same field, so long as they are 'consistent' with section 230." She contends that her claims do not attempt to treat Motiva as a publisher, but arise from "Motiva's failure to supervise Fournet's

5

conduct, investigate and discipline Fournet's conduct when Motiva knew or had reason to know of such conduct, Motiva's negligent entrustment to Fournet with Motiva IT and communication facilities, and Motiva's negligence in its undertaking to supervise, monitor, investigate and discipline its employee's activities." Additionally, Davis maintains that employers have a duty to control and supervise their employees, independent of Motiva's Code of Conduct.

Under section 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C.S. § 230(c)(1). Nor may a provider or user of an interactive computer service be held liable for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected[.]" *Id*. § 230(c)(2)(A). An "'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *Id*. § 230(f)(2). The "information content provider" is the person "responsible, in

6

whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id*. § 230(f)(3). Section 230 shall not "be construed to prevent any State from enforcing any State law that is consistent with this section." *Id*. § 230(e)(3). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with [] section [230]." *Id*.

Section 230(c)(1) "only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009). The parties do not dispute that the plain language of section 230 renders Motiva a provider or user of an interactive computer service or that Fournet qualifies as an information content provider. *See id*; *see also Lansing v. Sw. Airlines Co.*, 980 N.E.2d 630, 637 (Ill. App. 2012) (An employer qualifies as a provider or user of an interactive computer service when it uses an information system or service that multiple users, like its employees, use to access the Internet.). Accordingly, we must determine whether Davis's causes of action seek to treat Motiva as a publisher or speaker. *See Barnes*, 570 F.3d at 1100-01.

7

Davis relies on *Barnes*, *Lansing*, and *Jane Doe v. Internet Brands, Inc.,* 767 F.3d 894 (9th Cir. 2014), to support her position that her lawsuit is not barred by section 230.[2] In *Barnes*, Barnes's ex-boyfriend posted inappropriate profiles of Barnes on one of Yahoo's websites and posed as Barnes in chat rooms, after which unfamiliar men began contacting Barnes. *Barnes*, 570 F.3d at 1098. Barnes contacted Yahoo, but Yahoo failed to act, even after promising to do so, until Barnes filed a lawsuit. *Id*. at 1098-99. Barnes alleged claims for negligent undertaking and promissory estoppel. *Id*. at 1099, 1106. The trial court dismissed Barnes's lawsuit pursuant to section 230. *Id*. at 1099. On appeal, the Ninth Circuit found that Barnes could not maintain a negligent undertaking claim against Yahoo because "the duty that Barnes claims Yahoo violated derives from Yahoo's conduct as a publisher--the steps it allegedly took, but later supposedly abandoned, to de-publish the offensive profiles." *Id*. at 1102-03. Barnes could maintain her promissory estoppel claim because contract liability arose from "Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication." *Id*. at 1107-09.

---

[2] The *Doe* opinion was withdrawn by the Ninth Circuit, but we will address it given that Davis relies on it in her brief. *See Doe v. Internet Brands, Inc.*, No. 12-56638, 2015 U.S. App LEXIS 2727 (9th Cir. Feb. 24, 2015).

In *Lansing*, Lansing sued Southwest for negligent supervision on grounds that it allowed its employee, Thomas McGrew, to use Southwest's technology to threaten and harass Lansing and failed to discipline McGrew despite receiving notice from Lansing of McGrew's conduct. *Lansing*, 980 N.E.2d at 631-33. The trial court granted Southwest's motion for summary judgment on grounds that Southwest had immunity under section 230. *Id*. at 632-33. The Illinois Appellate Court disagreed, explaining that whether Southwest acted like a publisher or speaker of the offensive material was irrelevant to Lansing's claim. *Id*. at 639, 641. Specifically, holding Southwest "liable for its failure to supervise its employee after defendant had received notice of the employee's wrongful conduct does [] not treat defendant as if it were the publisher or speaker of the alleged e-mails and texts." *Id*. at 639. The Court explained:

> Defendant's duty to supervise its employee is distinct from any conduct like editing, monitoring or removing offensive content published on the Internet. Contrary to defendant's argument on appeal, plaintiff's theory of liability is not based on defendant allowing McGrew access to the Internet to publish inappropriate and defamatory electronic messages and then failing to either monitor his messages or prevent them from being sent or somehow remove them. Rather, plaintiff [] seeks to hold defendant liable for failing to investigate plaintiff's complaint about McGrew's wrongful conduct, reprimand him, and timely suspend or terminate his employment.

*Id*. at 639.

9

In *Doe*, Internet Brands, which owned a networking website called Model Mayhem, was sued for negligence by Doe, an aspiring model, who posted her information on Model Mayhem's website. *Doe*, 767 F.3d at 895. Doe alleged that two rapists used the website to lure her to a fake audition and that Internet Brands knew about the rapists but failed to warn Doe and other users of the website. *Id.* The trial court dismissed Doe's lawsuit pursuant to section 230. *Id.* On appeal, the Ninth Circuit found that Doe's lawsuit was not barred by section 230 and explained as follows:

> The duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes such content. Any obligation to warn could have been satisfied without changes to the content posted by the website's users. Internet Brands would simply have been required to give a warning to Model Mayhem users, perhaps by posting a notice on the website or by informing users by email what it knew about the activities of [the rapists].
>
> . . . A post or email warning that Internet Brands generated would involve only content that Internet Brands itself produced. An alleged tort based on a duty that would require such a self-produced warning therefore falls outside of section 230(c)(1). In sum, Jane Doe's negligent failure to warn claim does not seek to hold Internet Brands liable as the "publisher or speaker of any information provided by another information content provider."

*Id.* at 897-98 (internal citations omitted).

The record in this case does not demonstrate that Davis directly notified Motiva of Fournet's conduct. Davis's petition alleges that Motiva had actual or

10

constructive knowledge of the acts Fournet committed against Davis and should have known of Fournet's propensity to use Motiva's technology to interact with Craig's List and inappropriate websites. The petition does not contain facts alleging how Motiva received notice of Fournet's conduct against Davis. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Unlike in *Barnes*, *Lansing*, and *Doe*, in which the plaintiffs presented the facts underlying the defendants' receipt of notice regarding the conduct of another information content provider, Davis's allegations are nothing more than conclusory statements that cannot support a reasonable inference that Motiva is liable as alleged. *See id*.; *see also* Tex. R. Civ. P. 91a.1.

---

[3]Because Rule 91a is analogous to Federal Rule 12(b)(6), case law interpreting Rule 12(b)(6) is instructive. *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied).

11

Based on her pleadings, Davis suggests that because Fournet engaged in inappropriate internet usage before creating the Craig's List accounts referencing her, Motiva should have known of Fournet's propensity to engage in such conduct. Thus, had Motiva supervised Fournet by logging and monitoring, investigating and disciplining, and properly training Fournet, the fake Craig's List posts could have been prevented from being published. Unlike in *Lansing*, therefore, Davis's theory of liability is based on Motiva allowing Fournet access to the Internet, after it knew or should have known of Fournet's prior inappropriate internet activity, to publish fake Craig's List posts and failing to prevent those posts from being published. *See Lansing*, 980 N.E.2d at 639.

Moreover, Davis alleges that Motiva negligently undertook to perform services it knew or should have known were necessary to protect Davis by failing to exercise reasonable care to perform those services. This allegation appears to be based on Motiva's monitoring and logging policy. "Section 230(c)(2) immunizes from liability providers and users of interactive computer service who voluntarily make good faith efforts to restrict access to material they consider to be objectionable[.]" *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3rd Cir. 2003); 47 U.S.C.S. § 230(c)(2)(A). Because § 230(c)(2) allows an interactive computer service provider to "establish standards of decency without risking liability for

doing so[,]" Motiva cannot be held liable for its good faith efforts to restrict access to or availability of certain material. *See Green*, 318 F.3d at 472; *see also* 47 U.S.C.S. § 230(c)(2)(A).

Under these circumstances, taking Davis's pleadings as true, we conclude that the trial court did not err by finding that her claims have no basis in law or fact. *See* Tex. R. Civ. P. 91a.1.; *see also GoDaddy.com*, 429 S.W.3d at 754. Because the trial court properly granted Motiva's motion to dismiss, we overrule issue one.

Emotional Distress

In issue two, Davis argues that the trial court erred by dismissing her claims against Motiva on grounds that she is not entitled to damages for emotional distress. Davis contends that she has not filed a claim for negligent infliction of emotional distress, but "asserts these damages as a recoverable element of Motiva's violation of other duties, specifically duties to act reasonably in supervising its employees, in undertaking to supervise and monitor its employees' conduct, and in entrusting its employees with equipment." Under certain circumstances, a plaintiff may be entitled to recover mental anguish damages from a negligent defendant. *See Temple-Inland Prods. Corp. v. Carter,* 993 S.W.2d 88, 91 (Tex. 1999); *see also City of Tyler v. Likes*, 962 S.W.2d 489, 494-96 (Tex.

1997). Given our conclusion that the trial court did not err by dismissing Davis's claims against Motiva under section 230, we need not determine whether dismissal was also appropriate because Davis's claims do not entitle her to damages for emotional distress. *See* Tex. R. App. P. 47.1. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on February 26, 2015
Opinion Delivered April 2, 2015

Before McKeithen, C.J., Kreger and Horton, JJ.

14