2025 IL App (1st) 250913-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
December 15, 2025

No. 1-25-0913

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| PAMELA MARTIN, Individually and as Parent and Next Friend of O.J., a Minor, and CHRISTOPHER JACKSON, Individually and as Parent and Next Friend of O.J., a Minor, | ) ) ) ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | No. 24 L 4436 |
| | ) | |
| CARE.COM, INC., CORRINE DUNWOODY, MARIA PETRONE, and NINA CAMPBELL, | ) ) | The Honorable |
| | ) | Maire A. Dempsey, |
| | ) | Judge Presiding. |
| Defendants | ) | |
| | ) | |
| (Care.com, Inc., Defendant-Appellee). | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1   *Held:*   Plaintiffs' claims for statutory consumer fraud and negligent misrepresentation did not treat defendant as a publisher or speaker for purposes of section 230(c)(1) of the Communications Decency Act (47 U.S.C. § 230(c)(1) (2018)), and issues of fact existed that otherwise precluded involuntary dismissal of plaintiffs' cause of action.

¶ 2   The plaintiffs, Pamela Martin and Christopher Jackson, individually and as parents and next friends of their son O.J., a minor, appeal from the trial court's order involuntarily dismissing their

claims against defendant Care.com, Inc. The issue is whether the plaintiffs are barred from pursuing their claims by section 230(c)(1) of the Communications Decency Act (47 U.S.C. § 230(c)(1) (2018)) and whether certain provisions in the terms of use that the plaintiffs accepted when joining the Care.com platform defeat the plaintiffs' claims in their entirety. For the reasons that follow, we hold that section 230(c)(1) does not bar the plaintiffs' claims and that issues of fact exist that preclude involuntary dismissal under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2024)). Accordingly, we reverse and remand.

¶ 3                                    BACKGROUND

¶ 4        On April 23, 2024, the plaintiffs filed the present action against defendants Care.com, Corrine Dunwoody, Maria Petrone, and Nina Campbell. Only the claims against Care.com are pertinent to the present appeal.

¶ 5        Care.com is an internet platform in the business of, *inter alia*, soliciting consumers who are in the market to hire in-home caregivers. In April 2022, the plaintiffs were seeking to hire a nanny for their son O.J., born the previous month. They joined the Care.com website, paid a membership fee, and provided information to Care.com about the fact that they were looking for a nanny for their infant son.

¶ 6        In soliciting consumers, Care.com makes a number of statements on its website on the topic of "CareCheck" and the screening and evaluating of potential caregivers against its own conduct and eligibility standards. In their complaint, the plaintiffs cite the following statement made by Care.com on its website in marketing CareCheck to consumers:

        "Member safety is our top priority

        Every caregiver completes CareCheck

[Badge Icon] This badge indicates that a caregiver has completed a background check, called a CareCheck. Every profile you review will have one because we require it for all caregivers. Once the initial CareCheck is completed, caregivers are subject to recurring checks.

CareCheck includes

- Social Security number trace

- National Sex Offender Public Website search

- National Multi-Jurisdictional Criminal search

- Federal and county criminal records search[.]"

¶ 7    Although not contained in their complaint, the plaintiffs also cite the following additional statements made by Care.com on its website, which are included in the record as deposition exhibits:

- "Your Trust and Safety Are Our Priority

  We believe in the goodness of people, but we look out for our Care.com community. Here are a few ways we promote safety behind the scenes."

- "Member Screening

  Not everyone is right for the Care.com community. We ensure potential account holders are screened and evaluated against our conduct and eligibility standards. All caregivers are background-checked through our CareCheck process before they are able to interact with families."

- "All caregivers undergo a background check[.]"

- "We reject and remove bad actors and take steps to make sure they don't come back."

¶ 8        The plaintiffs' complaint alleges that while Care.com provides some information about the scope of its background checks to consumers, it does not explicitly state what is included or excluded from its "safe hiring packages." For example, while it recommends to consumers that they consider purchasing additional background checks that would include information about driving records or criminal convictions, there is no package that includes a history of reported child abuse or neglect.

¶ 9        On April 14, 2022, Care.com provided the plaintiffs with several candidates for their nanny position. One of the candidates whom Care.com background checked and presented to the plaintiffs as eligible and qualified for an in-home caregiver position was defendant Dunwoody. Care.com included a blue "CareCheck badge" on Dunwoody's profile.

¶ 10        The plaintiffs allege that the above statements from Care.com's website would cause any reasonable consumer to conclude that Care.com would not present as an eligible or qualified candidate someone with a history of child abuse or neglect. They allege that, at a minimum, a reasonable consumer would believe based on the above statements that Care.com's CareCheck process would include at least asking potential caregivers whether they have a history of child abuse.

¶ 11        The plaintiffs allege that if Care.com had disclosed to them that its eligible and qualified candidates included child abusers or that it did not screen for or ask candidates about their histories of child abuse, they would not have become members or paid the annual fee to Care.com and would not have hired Dunwoody. The plaintiffs allege that they hired Dunwoody after being misled by Care.com's statements about the safety and eligibility of its candidates.

¶ 12        The plaintiffs allege that unbeknownst to them at the time they hired her, Dunwoody had a history of child abuse and neglect. They allege that within days of hiring Dunwoody and her

beginning to work as O.J.'s nanny, she squeezed or shook the baby with enough force to break eight of his ribs. (We note that Dunwoody denies that she caused the baby's injuries in any way.)

¶ 13     The plaintiffs took the baby to a pediatrician, who made a report of suspected abuse or neglect to the Illinois Department of Children and Family Services. During the ensuing investigation into child abuse allegations, Dunwoody allegedly told investigators that plaintiff Christopher Jackson had made statements to her about being unable to handle the baby and wanting to hit something, which led her to suspect he may be responsible for the baby's injuries. Plaintiff Jackson was ultimately arrested on unspecified child abuse allegations. On May 11, 2022, he was excluded from the family home and denied any unsupervised contact with O.J. pursuant to a court-ordered safety plan.

¶ 14     The complaint alleges that on July 6, 2022, Dunwoody admitted to defendant Maria Petrone, an attorney involved with the investigation for the Cook County Public Guardian's office, that she had a history of child abuse and neglect. However, this information was kept from the plaintiffs for nearly a year until the notes from Petrone's interview were produced to them.

¶ 15     On September 8, 2023, the Cook County State's Attorney's office filed a motion to voluntarily dismiss the criminal charges against plaintiff Jackson. According to the plaintiffs' complaint, the motion to voluntarily dismiss states:

> "Since the time of the filing, the People have received additional information regarding [O.J.'s] former nanny having a history of child abuse allegations in another state, which has been shared with all parties. *** Although the evidence supports the allegations that the minor was physically abused, the totality of the evidence no longer suggests that either of the parents injured or failed to protect the minor, or that court intervention is necessary to keep the minor safe."

¶ 16        Count I of the plaintiffs' complaint alleges that the conduct of Care.com as described above was deceptive in violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2022)) (Consumer Fraud Act). It alleges that Care.com sold deceptive and misleading background information to the plaintiffs knowing that they would rely upon that information both in deciding to pay Care.com's membership fee and to hire a nanny candidate presented by Care.com. It alleges that Care.com intended for the plaintiffs to rely upon the deception, that the deception occurred in the course of trade or commerce, and that the plaintiff suffered actual damages of which defendants' conduct was a proximate cause. It also alleges that the facts concealed were material and that Care.com employed the concealment as a device to mislead the plaintiffs.

¶ 17        Count II of the plaintiffs' complaint alleges that Care.com's conduct constituted negligent misrepresentation. It alleges that Care.com owed them a duty not to misrepresent facts. It alleges that Care.com breached this duty when it represented to them that it would perform a background check to present eligible and qualified in-home caregiver candidates and that Dunwoody was an eligible and qualified in-home caregiver candidate for O.J.

¶ 18        Care.com moved for involuntary dismissal, arguing that two forms of affirmative matter defeated the claims asserted against it. See 735 ILCS 5/2-619(a)(9) (West 2024). First, it argued section 230 of the Communications Decency Act (47 U.S.C. § 230 (2018)) barred the plaintiffs' claims because they sought recovery for harms that trace back to Care.com's duties as a publisher of content or communications by third parties through its Internet platform. Second, it argued that certain release and exculpatory provisions included in the terms of use that the plaintiffs had

accepted when they joined the Care.com website also barred the claim. The specific provisions of the terms of use relied upon are set forth in the analysis below.[1]

¶ 19     Two affidavits were attached to Care.com's motion to dismiss. One was by Naaz Nichols, its chief customer experience service officer. Nichols' affidavit was submitted largely for the purpose of establishing a foundation for Care.com's terms of use and the fact that both the plaintiffs and Dunwoody had accepted these when they joined the Care.com website. Nichols also averred that on March 8, 2022, a third-party credit reporting agency had performed a CareCheck on Dunwoody using personal information that she had provided during the Care.com registration process. The CareCheck that was performed upon Dunwoody did not disclose any criminal history, and the report was attached as an exhibit to Nichols' affidavit. Dunwoody thereafter posted a profile advertising her childcare services on the Care.com website. Nichols also averred that Care.com makes available for purchase various tiers of background checks by third-party credit reporting agencies that are additional to and more comprehensive than CareCheck, and it recommends that members purchase these additional products when carrying out their responsibility under the terms of use of selecting, performing due diligence, and hiring care providers.

¶ 20     The second affidavit was by codefendant Petrone.[2] Pertinent here, that affidavit set forth what Dunwoody had said to Petrone during their interview on July 6, 2022. According to Petrone's affidavit, Dunwoody said that 17 years prior to the interview, when she was living in New Jersey and taking care of her niece, a neighbor called that state's child welfare authorities after fabricating

---

[1] Care.com additionally moved for dismissal of the plaintiffs' complaint under section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2024). The trial court dismissed the case without ever ruling on the arguments under section 2-615, and they are not the subject of this appeal.

[2] This affidavit was originally filed in this case in connection with a separate motion to dismiss by defendant Petrone, which is not presently before this court.

a story about Dunwoody hurting her niece. Petrone's affidavit stated that Dunwoody told her that no services were recommended, no trial had occurred, and her kids had been returned to her.

¶ 21    The plaintiffs filed a response to the motion for involuntary dismissal. Attached to it was a transcript of Nichols' discovery deposition taken in connection with this motion. Among the plaintiffs' arguments was that Nichols had given testimony that supported their claim that one of Care.com's eligibility criteria for caregivers is that they must never have been accused of, charged with, or arrested for child abuse but that the CareCheck does not involve asking a caregiver about that topic. Nichols testified on this point:

> "Q. Okay. Ms. Nichols, it is true, isn't it, that Care.com does not ask potential caregivers if they have ever been accused of or charged with child abuse?
>
> A. We run the care check. We don't ask those direct questions.
>
> Q. Okay. It is one of Care.com's eligibility criteria that a caregiver not have been accused of or charged with or arrested for child abuse, true?
>
> A. Correct."

The plaintiffs also cited the following testimony by Nichols:

> "Q. And as we saw, the care check doesn't ask for child abuse arrests, does it?
>
> A. That's not how background checks work.
>
> Q. My question is the care check doesn't ask for child abuse arrests, does it?
>
> A. The care check, you mean ask of the provider?
>
> Q. Yes.
>
> A. No, the care check does not function in that way."

¶ 22    Care.com filed a reply in support of its motion. Attached to that reply brief was a declaration by Care.com's counsel establishing a foundation for several additional pages from the Care.com website and online "Safety Center" pertaining to the topic of background checks.

¶ 23    The matter proceeded to oral argument on February 26, 2025, at which time the trial court granted Care.com's motion for involuntary dismissal under section 2-619(a)(9) with prejudice and without leave to amend. In reasoning, the trial court stated that it found that section 230 of the Communications Decency Act applied with regard to any statements of Dunwoody's prior criminal arrest for child abuse. It expressed concern whether there would be any duty to disclose an arrest nearly 20 years ago that had not resulted in a conviction. The trial court also found that the Care.com website expressly disclaimed responsibility, warned that background checks were not thorough, and recommended that additional background checks were available if the parties chose to do so. The trial court subsequently entered an order finding no just reason for delaying either enforcement or appeal of that dismissal order. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). This appeal followed.

¶ 24                                ANALYSIS

¶ 25    This is an appeal of an order of involuntary dismissal entered pursuant to section 2-619(a)(9) of the Code of Civil Procedure. 735 ILCS 5/2-619(a)(9) (West 2024). A motion to dismiss under section 2-619(a)(9) admits the legal sufficiency of the plaintiffs' complaint but raises an affirmative defense or other matter that avoids the legal effect or defeats the plaintiffs' claims. *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 21. In reviewing whether a section 2-619 motion should have been granted, we may consider all facts presented in the pleadings, affidavits, and depositions of record. *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2017 IL 117720, ¶ 4. All well-pleaded facts and reasonable inferences that can be drawn

from those facts are deemed admitted, and all pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party. *Id.* A section 2-619 motion presents an issue of law that we review *de novo*, meaning we afford no deference to the determinations made by the trial court. *Id.* The question that we must consider is whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether involuntary dismissal was proper as a matter of law. *Rehfield*, 2021 IL 125656, ¶ 23.

¶ 26 The first issue we consider is whether the trial court was correct in its conclusion that the plaintiffs' claims against Care.com are barred by section 230 of the Communications Decency Act. 47 U.S.C. § 230 (2018). The relevant subsection of that federal statute provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1). No cause of action may be brought or liability imposed under any State or local law that is inconsistent with section 230. *Id.* § 230(e)(3).

¶ 27 The plaintiffs argue that their claims are not barred under section 230(c)(1), and thus the trial court erred in dismissing them on this basis. According to the plaintiffs, their claims are not barred because they are premised upon statements that Care.com itself made to consumers about safety and eligibility in order to solicit those consumers to use Care.com's website: that "[w]e reject and remove bad actors;" that "[m]ember safety is our top priority;" and that "[w]e *ensure* potential account holders are screened and evaluated against our conduct and *eligibility* standards. All caregivers are background-checked through our CareCheck process before they are able to interact with families;" as well as other statements. (Emphases in plaintiffs' brief.) The plaintiffs emphasize that their claim is that these statements by Care.com itself are false and misleading, adding that this claim is supported by the deposition testimony of Care.com's own corporate

representative that its eligibility criteria include that a caregiver not have been accused or charged with child abuse but that Care.com does not ask potential caregivers if they have a history of child abuse. The plaintiffs argue that Care.com cannot escape responsibility for its own misleading statements to consumers by reframing or mischaracterizing these as statements or communications made by third parties on or through its Internet platform. They stress that Care.com made these statements on its website to solicit consumers with the intent that consumers (including the plaintiffs) would rely upon the statements to purchase its services. Any reasonable consumer, they argue, would conclude from these statements that potential caregiver candidates were safe, eligible, qualified and had been screened for—or at least asked about—whether they had histories of child abuse and neglect.

¶ 28    For its part, Care.com argues the trial court correctly found that the plaintiffs' claims were barred by section 230 because they involve precisely the kinds of legal theories that seek to hold Internet platforms liable for publishing third-party content, and the plaintiffs have engaged in artful pleading by attempting to characterize their claim as being based on misrepresentations by Care.com itself. Care.com emphasizes that the plaintiffs do not identify any misstatement of fact or misleading omission relating to the safety, suitability, or eligibility of Dunwoody to care for their son or about the screening that Care.com would perform on her. Instead, it argues, the plaintiffs' claims are premised on duties derived from Care.com's general statements about its policies for "content moderation," which the plaintiffs assert created the impression that Care.com would "filter out and remove content posted by providers who misrepresented their eligibility to join the platform." In other words, Care.com contends, the plaintiffs' claim is that because Care.com described the limited screening activities that it performs (and that were in fact

performed in Dunwoody's case), a duty was assumed to do more to ensure that no harmful or deceptive content appeared on its website.

¶ 29 This court has previously recognized that section 230(c)(1) does not grant blanket immunity to an interactive computer service provider from any civil cause of action that involves content posted on or transmitted over the Internet by a third party. *Lansing v. Southwest Airlines Co.*, 2012 IL App (1st) 101164, ¶ 40 (citing *Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008)). Rather, it limits who may be treated as a "publisher or speaker" of information that appears online and thus forecloses liability that depends on an interactive computer service user or provider being deemed a publisher or speaker, examples of which include causes of action for defamation, obscenity, or copyright infringement. *Id.* ¶ 41 (citing *City of Chicago v. StubHub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010), and *Doe v. GTE Corp.*, 347 F.3d 655, 659-60 (7th Cir. 2003)). As more recently stated by the Seventh Circuit, section 230(c)(1) "precludes liability only where the success of the underlying claims requires the defendant to be considered a publisher or speaker of [third-party] content." *Webber v. Armslist LLC*, 70 F.4th 945, 957 (7th Cir. 2023).

¶ 30 A defendant invoking section 230(c)(1) as an affirmative defense must establish three elements: (1) that the defendant is the "provider or user of an interactive computer service," and (2) that it is being "treated as the publisher or speaker" of (3) "information provided by another content provider." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023) (quoting 47 U.S.C. § 230(c)(1) (2018)). The plaintiffs here do not contest that Care.com is the provider of an "interactive computer service." See 47 U.S.C. 230(f)(2) (2018). The central issue is whether Care.com is being treated as a publisher or speaker in this case.

¶ 31 Whether a defendant is being treated as a publisher or speaker in a claim requires a court to focus on " 'whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a ' "publisher or speaker." ' " *G.G.*, 76 F.4th at 567 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009)). In *Lansing*, this court applied this test from *Barnes* and looked to the source of the duty in holding that a plaintiff's cause of action for negligent supervision did not require treating the defendant as a "publisher or speaker" of harassing e-mails and text messages sent by an employee through the defendant's computer. *Lansing*, 2012 IL App (1st) 101164, ¶¶ 45-47. The court in *Lansing* noted that in *Barnes*, the plaintiff had sued the website Yahoo under theories of negligent undertaking and promissory estoppel based on Yahoo's failure to remove indecent profiles of the plaintiff posted on its website by her ex-boyfriend after Yahoo had agreed to do so. The court in *Barnes* had held that the negligent undertaking claim was barred under section 230(c)(1) because the duty allegedly violated was one that derived from Yahoo's conduct as a publisher, *i.e.*, failure in its undertaking to remove or depublish the offensive profile. *Id.* ¶ 46 (citing *Barnes*, 570 F.3d at 1103). However, the promissory estoppel claim was not barred because the duty allegedly violated sprang from an enforceable promise that Yahoo had breached to remove the offensive material from its website. *Id.* (citing *Barnes*, 570 F.3d at 1107-08).

¶ 32 Following *Barnes*, this court in *Lansing* focused on the source of the duty that the plaintiff was alleging the defendant had violated in his negligent supervision claim and whether it derived from the defendant's status or conduct as a publisher or speaker. *Id.* ¶ 47. This court reasoned that the duty allegedly violated under the plaintiff's claim was derived from the defendant's duty as an employer to supervise its employees' conduct, and such duty was distinct from any publisher-like

conduct such as "editing, monitoring or removing offensive conduct published on the Internet." *Id.*

¶ 33    In this case, count I of the plaintiffs' complaint alleges a violation of the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2022)) based upon allegedly deceptive statements that Care.com itself made to consumers on its website about its services. The Consumer Fraud Act provides that "deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce are hereby declared unlawful." *Id.* § 2. Proving a violation of the Consumer Fraud Act requires a plaintiff to establish (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 180 (2005).

¶ 34    Focusing on the source of the duty allegedly violated under this legal theory, we conclude that it derives from the statutory right of consumers to be free from deceptive acts or practices in the course of trade or commerce. The corresponding obligation of Care.com is not to make misleading statements to consumers in the solicitation of business. Complying with this duty certainly cannot be said to *require* Care.com to moderate what caregivers communicate about their backgrounds through its platform. See *Estate of Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1177 n.3 (9th Cir. 2024) (duty must *require* defendant to respond by monitoring third-party content or undertake other publisher-like action, not simply be one option for compliance). It would seem that Care.com's ability to satisfy its statutory duty under this cause of action stems from the

statements Care.com itself chooses to make to consumers on its website. Accordingly, success on this cause of action does not require it to be treated as a publisher or speaker of content posted on its platform by third parties.

¶ 35    We believe the plaintiffs' negligent misrepresentation claim derives from a similar duty. An action for negligent misrepresentation may be maintained if the complaint alleges that the defendant is in the business of supplying information for the guidance of others in their business transactions and, therefore, owes a duty to the plaintiff, a breach of that duty, and injury proximately caused by the breach. *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 233 (1991). Count II of the instant complaint alleges that Care.com was in the business of supplying information for the guidance of others in hiring in-home caregivers; that it supplied information for the guidance of the plaintiffs in hiring a nanny; and that it breached its duty not to misrepresent facts when it represented that it would perform a background check to present eligible and qualified in-home caregiver candidate for OJ. Although this presents a slightly closer question, we find that the duty allegedly violated still derives from Care.com's own statements. In other words, it is Care.com's own undertaking to have background checks performed on all potential caregivers and to inform customers of this when soliciting their business. Nothing other than a business decision requires Care.com to do this; it could simply allow potential caregivers to use its platform to communicate their background and qualifications to other customers and place the entire burden of conducting background checks on customers. If Care.com had done only the latter, then arguably publisher liability would be the only source of a duty from which liability could be imposed in a negligence claim. However, because Care.com undertook to have background checks performed on all potential caregivers and to make statements to customers about what these background checks entailed, its duty to customers such as the plaintiffs derives from its own

actions and statements in this regard. In our view, Care.com's ability to comply with this duty does not *require* it to moderate content or communications made by third parties through its Internet platform. Accordingly, success on this claim does not require it to be treated as a publisher or speaker in contravention of section 230(c)(1).

¶ 36    In arguing that it is improper here to view the duties as stemming from Care.com's own statements, Care.com essentially argues that each statement at issue is either nonactionable or not misleading. It argues that the duties the plaintiffs are seeking to impose "are based upon subjective inferences they say they drew from Care.com's general descriptions of its content moderation policies and priorities, not any contractual obligations or specific promises Care.com made." It contends that the "key point" for purposes of applying section 230(c)(1) is that the plaintiffs are claiming Care.com's statements are false *because* they were able to access Dunwoody's profile on the Care.com platform notwithstanding the existence of its policies for moderating content and its statements about these policies. It asserts that the plaintiffs' claims "are premised on supposed duties to effectively screen Dunwoody's third-party content that [the plaintiffs] contend Care.com supposedly assumed from its general descriptions of its third-party content moderation priorities and processes, which are quintessential publishing activities." It argues that the choices that it made and accurately described about those content-screening activities that it agreed to undertake are protected under section 230.

¶ 37    We reject Care.com's argument that the statements upon which the plaintiffs' claims are based are merely statements about its policies for moderating content posted or communicated by third parties on its Internet platform. In support of this proposition, Care.com primarily relies upon *Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025). There the court held that an internet matchmaking platform could not be held liable under a theory of negligent misrepresentation for

a statement that its app was designed to create a "safe and secure environment for its users." *Id.* at 1154. The court held that this statement was not an enforceable promise; rather it was "a description of its [content] moderation policy, and thus protected from liability under § 230." *Id.* The court added that the statement was too general to be enforced. *Id.*

¶ 38    Here, by contrast, we agree with the plaintiffs that in totality, the statements by Care.com on its website are more specific than the statement at issue in *Doe*. More importantly, though, we find the statements at issue in this case to refer to Care.com's own undertaking to ensure that potential caregivers undergo background checks prior to interacting with other customers. When we view these in their light most favorable to the plaintiffs, these statements simply are not about moderating content that is posted to or communicated through an Internet platform. For example, when Care.com states that "[w]e ensure potential account holders are screened and evaluated against our conduct and eligibility standards" by being "background-checked through our CareCheck process," the court views this as a statement about Care.com's own undertaking to its customers, which has nothing to do with the actions of a publisher concerning third-party content posted on the Internet.

¶ 39    We recognize that, as in many cases invoking section 230, Internet publishing plays a role in the fact pattern of this case. If Care.com had not published Dunwoody's Internet profile to the plaintiffs, their injury would not have occurred. But as the plaintiffs correctly argue, that is not the determinative test. "In cases such as these, 'publishing activity is a but-for cause of just about everything defendants are involved in. They are internet publishing businesses.' " (Cleaned up.) *Estate of Bride*, 112 F.4th at 1176 (quoting *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016)). The applicable test is not whether publishing is a but-for cause of the plaintiffs' injury,

but whether the duty underlying the plaintiffs' cause of action derives from the defendant's status or conduct as publisher or speaker. *Id.*

¶ 40 As stated above, Care.com also asserts that the statements on its website were not deceptive or misleading. However, whether a statement is deceptive or misleading is a question of fact (*Lesorgen v. Mondelez Global, LLC*, 674 F. Supp. 3d 459, 465 (N.D. Ill. 2023)), and we fail to see how it has any bearing on the question of whether the relevant duty requires treating Care.com as a publisher or speaker. The same goes for Care.com's argument that the statements at issue are too general to give rise to the obligations that the plaintiffs seek to impose. These are defenses that Care.com can raise to the plaintiffs' claims at later stages of this case, but the existence of these defenses does not implicate section 230 in this case. See *Estate of Bride*, 112 F.4th at 1179.

¶ 41 The next issue we address is whether the plaintiffs' claims are defeated by disclaimers in the terms of use that the plaintiffs accepted when joining the Care.com website. In summary, the plaintiffs argue that Care.com cannot disclaim or exculpate itself from liability for its own deceptive conduct or misleading statements and that the terms of use merely raise issues of fact that should have precluded dismissal under section 2-619(a)(9).

¶ 42 Initially, we are left somewhat to speculate as to precisely what the trial court was relying upon when it ruled on this argument. The court stated, "I think that the Care.com's website does expressly disclaim responsibility. It warns that the background checks are not thorough. It advises and it recommends—maybe that's a better word—that there are additional background checks available if the parties choose to do so." However, as shown below, these comments by the trial court do not completely align with the arguments for dismissal made by Care.com, which concerned its terms of use, not its website. In its appellee brief, Care.com does not make any argument concerning disclaimers or warnings on its website. Its argument is based only on the

provisions of the terms of use to which the plaintiffs agreed when they joined the Care.com website. Accordingly, we proceed on *de novo* review to consider the argument for dismissal as framed by Care.com in its brief.

¶ 43    Care.com argues that the terms of use establish as a matter of law that Care.com never said that it would perform any of the undertakings upon which the plaintiffs' claims are based and that it made no misleading statement or omission. We note that the plaintiffs do not dispute in this case the fact that they accepted these terms of use when they joined Care.com.

¶ 44    First, Care.com argues that the plaintiffs' core allegation that they drew an "inference" about what was involved in a CareCheck and about what that meant as far as whether a care provider like Dunwoody met the platform's eligibility standards is foreclosed by section 1.2 and 11.1 of the terms of use. Section 1.2 states in part that Care.com does not "refer or recommend *** Care Providers nor *** make any representations about the suitability, reliability, timeliness, or accuracy of the services provided by Care Providers or the integrity, responsibility or actions of *** Care Providers whether in public, private or offline interactions." Section 11.1 states, "CARE.COM MAKES NO REPRESENTATION OR WARRANTIES OF ANY KIND WHETHER EXPRESS OR IMPLIED REGARDING THE SUITABILITY OF ANY USER OF OUR SITE TO PROVIDE SERVICES AS A CARE PROVIDER ***."

¶ 45    Second, Care.com argues that the inference the plaintiffs allegedly drew from reading its eligibility criteria about whether potential care providers would be asked about their history of child abuse allegations during a CareCheck is foreclosed by sections 1.2, 4.5, 4.6, 4.7, and 11.2 of the terms of use. Section 1.2 states in part that "[a]ny screening of a *** Care Provider and his, her or its information by Care.com is limited and should not be taken as complete, accurate, up-to-date or conclusive of the individual's or entity's suitability as *** [a] care provider."

¶ 46         Section 4.5 provides:

"By registering for and using the Site or Services as a Care Seeker or Care Provider, you hereby acknowledge and agree that Care.com has the right, but not the obligation, to use a third-party consumer reporting agency on an ongoing basis to use your personal information to run periodic background screenings on you for the purpose of protecting the safety and integrity of our Site and its users ('Preliminary Membership Screens'), which may, in the case of certain Care Providers, be deemed to be an employment purpose under the FCRA. Subject to certain additional disclosures and authorizations, if applicable to you as a Care Provider, Care.com may order these screenings when you register with Care.com and thereafter in connection with your continued use of our Services and/or interaction with our Site (such as by contacting or communicating with other members, posting or updating a job or profile, ordering or authorizing a Background Check, etc.).

These Preliminary Membership Screens may also [*sic*] regulated by FCRA, and the background reports resulting from these services may be considered 'consumer reports' under FCRA.

You understand and agree that Care.com may review the information provided by the third-party consumer reporting agency and that Care.com retains the right to terminate your Care.com registration based on the information it receives from these checks, even if such information was subsequently changed or corrected. If Care.com terminates your membership or access to the Site on the basis of information in a background report, we will notify you and provide you the name and contact information of the consumer reporting agency that created the report. We will also provide you access to a copy of the report unless the consumer reporting agency has already provided you a copy or access to it. *You hereby*

*represent, understand and expressly agree that Care.com does not have control over or assume any responsibility for the quality, accuracy, or reliability of the information included in these checks.* Furthermore, any inaccuracies in the report must be addressed with the consumer reporting agency that issued it (and not Care.com) within the time period specified in your notice. Notwithstanding this, you agree that Care.com is under no obligation to reinstate any accounts it may have terminated even if the information that led to the termination is subsequently changed or corrected." (Emphasis added.)

¶ 47      Section 4.6 provides in part that "Care.com reserves the right, *but not the obligation*, to utilize third party service providers to verify on an ongoing basis that your registration data is accurate and that the representations and warranties in Section 2 above addressing legal matters such as complaints, arrests, sex offender status, etc. are also true." (Emphasis added.)

¶ 48      Section 4.7, titled "Important Limitations About Background Checks; Release of Liability for Results of Background Checks, Internal Background Checks, and Verification Checks," provides:

> "SPECIAL NOTICE FOR MASSACHUSETTS AND NEW HAMPSHIRE: Criminal County Searches conducted in Massachusetts and New Hampshire as part of the Criminal Records Check and the Criminal+MVR Records Check (for individuals who are believed to have lived in one or both of these states during the seven years preceding the background check request) search only the Superior Court and a single District Court in the county seat or its equivalent for each county listed below. Criminal records (including misdemeanors and felonies) from other courts in these states will not be searched.

> This is an illustrative, non-comprehensive, list of certain state and county limitations of the background checks offered through Care.com; additional limitations may apply in

certain jurisdictions, including on the federal level. For example, for many states only certain registered sex offender information is reported, and for many states, only a subset of felony convictions are reported (and not any misdemeanors, charges or arrest records).

In addition to legal and reporting system limitations of background checks, each check is performed with the authorization of the person being checked, using information he or she provides, such as home address, social security number, date of birth, and name. If a candidate provides incorrect information, the check might be run with inaccurate identifying data, which can impact the validity of the criminal check. Finally, criminal records are not always reported accurately or promptly, and human and electronic error can result in inaccurate or incomplete reporting. Consequently, even the most comprehensive background check offered may not disclose the existence of all criminal records in all jurisdictions.

If you decide to access, use, or share information provided by a Background Check, you agree to do so in accordance with applicable law. You also agree to release, indemnify and hold harmless Care.com from any loss, liability, injury, death, damage, or costs that may result from your use of, reliance on, or sharing of the information contained in a Background Check regardless of the cause, including, without limitation, due to the inaccuracy or incompleteness of any such information.

You expressly acknowledge that Care.com has no obligation to perform Background Checks, Internal Background Checks, or Verification Checks on any Registered Users. To the extent Care.com performs such checks on certain Registered Users, *the checks are limited and should not be taken as complete, accurate, up-to-date or conclusive evidence of the accuracy of any information those users have provided or of their eligibility to use the Services*." (Emphasis added.)

¶ 49        And section 11.2 states in part, "You also agree not to rely solely on steps Care.com may take to vet or screen Care Providers *** and/or their Content, or otherwise to promote the safety of the Site and Services."

¶ 50        Finally, Care.com adds that these last two provisions in sections 4.7 and 11.2 negate the reliance-based elements of the statutory consumer fraud and negligent misrepresentation claims. It also argues that the plaintiffs do not identify any statement on Care.com's website that contradicts or is inconsistent with the above provisions, and they cannot impose a legal duty upon Care.com to do or say more by drawing unreasonable inferences from Care.com statements that are flatly contradicted by the terms of use to which they agreed.

¶ 51        The plaintiffs make several arguments in response, one of which is that the terms of use only raise issues of fact, which precludes involuntary dismissal under section 2-619(a)(9). We agree with the plaintiffs on this point. We find that the above provisions merely constitute evidence contradicting the plaintiffs' allegations that Care.com's statements were deceptive or misleading, that it intended the plaintiffs or other consumers to rely on them, or that the plaintiffs' reliance was reasonable. We do not find the terms of use to be so dispositive on any element as to entitle Care.com to dismissal under section 2-619(a)(9) as a matter of law. In reaching this determination, the court reviewed the entirety of the terms of use specifically looking for the term "CareCheck" and a description of what it involves. In doing so, we find that the term "CareCheck" does not appear anywhere in this 26-page document. This leads us to conclude that it is an issue for the trier of fact whether the terms of use negate the inferences that a reasonable consumer could draw from the statements made by Care.com on its website which form the basis of the plaintiffs' claims.

¶ 52        Finally, we acknowledge that part of the trial court's reasoning in involuntarily dismissing this case was its concern as to whether there was any duty to disclose an arrest that had occurred

nearly 20 years earlier that had not resulted in a conviction. Care.com also argues that it would be legally prohibited from obtaining a background check involving an allegation that old. Although we do not necessarily dispute these points, we do not find that the facts of Dunwoody's alleged history of child abuse have been adequately established at this point in the case. The only evidence we find in the record is the affidavit by codefendant Petrone setting forth what Dunwoody said to her during their interview of July 6, 2022. This affidavit statement constitutes double hearsay in this context and is thus not competent evidence that can be considered on a motion for involuntary dismissal. See *State ex rel. Beeler, Schad & Diamond, P.C. v. Target Corp.*, 367 Ill. App. 3d 860, 874 (2006). Whether any child abuse accusations or charges were ever made against Dunwoody, the nature and extent of any such accusations or charges, and the timeframe in which they occurred are questions that would seem to go to the very heart of the plaintiffs' claims in this case. The plaintiffs should be entitled to some discovery on this matter before this issue of duty is decided.

¶ 53                                    CONCLUSION

¶ 54        For the foregoing reasons, we reverse the trial court's order of involuntary dismissal entered in favor of defendant Care.com and against the plaintiffs, and we remand this case for further proceedings.

¶ 55        Reversed and remanded.